UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

SERVICE DRYWALL COMPANY, INC.                                    PLAINTIFF

v.                                            CIVIL ACTION NO. 3:06-CV-372-S

COMMONWEALTH WALLS, INC., et al.                               DEFENDANTS

## MEMORANDUM OPINION

This matter is before the court upon three separate but interrelated motions for summary judgment filed by the defendants William Clay Locke ("Locke") (DN 48), Anthony G. Steier ("Steier") (DN  47), and Commonwealth Walls Inc. ("CWI") (DN 49).

## BACKGROUND

The plaintiff in this action, Service Drywall Company ("SDC"), is a drywall systems services company located in Indianapolis, Indiana.   SDC is engaged in the business of providing drywall installation and drywall related services.  Dan Roberts ("Roberts") formed SDC in 1979 and is SDC's sole owner, shareholder, and officer.   Jeff Vaughn ("Vaughn") is SDC's general manager and is responsible for overseeing SDC's daily operations.  In early 2005, SDC sought to open an office in Louisville, Kentucky.  In April 2005, SDC hired Locke to open and run the Louisville office as a "branch manager" at a salary of $ 90,000  per year.  Locke refused to enter into either a written employment agreement or a non-compete agreement with SDC.

Prior to accepting his position with  SDC, Locke and Steier discussed forming CWI, their own drywall systems company.  According to Steier, Locke accepted the position at SDC because he was not willing to forgo a salary while CWI was in the start-up phase.  After beginning his employment with SDC, Locke, along with Steier, began taking steps to form CWI.  On June 21, 2005, CWI was formed,

with Locke and Steier as its directors and officers. From its inception, Locke actively managed and operated CWI, sometimes out of SDC's Louisville office using SDC resources. Locke did not disclose his formation and operation of CWI to SDC. SDC, however, learned of Locke's actions and terminated him on February 9, 2006. Shortly thereafter, SDC filed this action against Locke, Steier, and CWI asserting claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and tortious interference with contract and prospective contractual relations.[1]

## DISCUSSION

A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.* The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968). The evidence must be construed in a light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. V. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

---

[1]SDC has also asserted an accounting claim against each of the defendants. Locke has not moved for summary judgment with respect to this claim. Steier and CWI have moved for summary judgment as to this claim. SDC has not opposed summary judgment with respect to Steier. As such, the court will grant summary judgment as to this claim against Steier. CWI has noted that if SDC's tortious interference claim against CWI is dismissed, the accounting claim should also be dismissed. Inasmuch as this court finds that summary judgment is not appropriate as to SDC's claim against CWI for tortious interference, the court will not dismiss SDC's accounting claim against CWI.

### I. Breach of Fiduciary Duty

SDC claims that Locke breached his fiduciary duty to SDC by forming and operating CWI. According to SDC, CWI performed drywall systems services that were in direct competition with SDC. Locke argues that he was not an officer or director of SDC but rather was merely an "ordinary" employee, whose primary duty was sales. He argues that he did not occupy a fiduciary status with respect to SDC and, as such, was not subject to any fiduciary duty. Locke also argues that even if he were considered a fiduciary, CWI was not in competition with SDC. According to Locke, CWI provided residential drywall services while SDC provided commercial drywall services.

Under Kentucky law, a fiduciary relationship exists where a relationship is "founded on trust or confidence reposed by one person in the integrity and fidelity of another and which also necessarily involves an undertaking in which a duty is created in one person to act primarily for another's benefit in matters connected with such undertaking." *ATC Distrib. Group, Inc. v. Whatever It Takes Transmission & Parts, Inc.* 402 F.3d 700, 715 (6th Cir. 2005) (quoting *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc*., 807 S.W.2d 476, 485 (Ky.1991)). "There is no *per se* rule in Kentucky that a 'mere' salesperson cannot owe a fiduciary duty to his or her employer." *ATC Distrib.*,. 402 F.3d at 715 (citing *Stewart v. Ky. Paving Co.*, 557 S.W.2d 435, 438 (Ky.App.1977)). In *Stewart*, a salesperson was found to have a fiduciary duty to his employer because "the ties Stewart had to the management of Kentucky Paving Company placed him in a position of trust and permitted him access to confidential corporate information." *Stewart*, 557 S.W.2d at 438.

The record in this case indicates that Locke was given oversight and control over the operations of SDC's Louisville office as well as access to SDC's confidential information. Locke contends that SDC cannot create a fiduciary duty simply by labeling Locke as a "branch manager." Locke, however, himself referred to himself as the "manager" of SDC's Louisville office in his deposition. The record

- 3 -

indicates that in addition to "selling the company" and providing estimates and bids for potential jobs, Locke was responsible for budgeting and billing the jobs performed out of SDC's Louisville office and for procuring the necessary materials for those jobs. He was also responsible for approving the time sheets and payroll applications submitted to the Louisville office. Although Locke contends that there was nothing unique with respect to SDC's operations, Locke had access to SDC's confidential customer database and its confidential bid and pricing information. Additionally, Vaughn testified that SDC would send Locke "anything he asked and share any information he needed to... assist him in the Louisville operation." Locke makes much of the fact that he refused to enter into an employment contract and non-compete agreement with SDC. While such action prevented SDC from imposing any contractual fiduciary duty upon Locke, it did not relieve Locke of his common law fiduciary duty. *See Invesco Institutional (N.A.), Inc. v. Johnson*, 500 F.Supp.2d 701, 708-09 (W.D.Ky. 2007) (finding that employees had both contractual fiduciary duties under their employment agreement and common law fiduciary duties under Kentucky law). Accordingly, the court finds that Locke owed SDC a fiduciary duty under Kentucky law.

"[A]n employee-fiduciary may be liable to the employer for any gain derived by establishing a competing interest without full disclosure to the employer, even if the employer has suffered no loss. *DSG Corp. v. Anderson*, 754 F.2d 678, 682 (6th Cir. 1985) (citing *Hoge v. Kentucky River Coal Corp.*, 287 S.W. 226, 227 (Ky. 1926)). A genuine issue of fact exists as to whether CWI was in competition with SDC. The record contains conflicting testimony regarding the standard used in distinguishing between commercial drywall jobs as opposed to residential drywall jobs. However, even under the standard advocated by Locke, the record contains evidence sufficient to indicate that CWI engaged in commercial jobs, and that SDC engaged in residential jobs. Summary judgment is, therefore, inappropriate as to SDC's claim for breach of fiduciary duty against Locke.

- 4 -

## II. Aiding and Abetting Breach of Fiduciary Duty

SDC claims that Steier aided and abetted Locke's breach of fiduciary duty.  Steier contends that even if Locke is found to have breached his fiduciary duty by forming and operating a competing business, Steier had no knowledge that CWI would be a competitor of SDC.[2]

Under Kentucky law, "a person who knowingly joins with or aids and abets a fiduciary in an enterprise constituting a breach of the fiduciary relationship becomes jointly and severally liable with the fiduciary for any profits that may accrue."  *Steelvest,* 807 S.W.2d at 485 (citations omitted).  In support of his argument that he lacked knowledge that CWI would be a competitor of SDC, Steier relies on his limited involvement in CWI's operations and Locke's representations to him that SDC had approved of CWI's formation and authorized CWI to perform residential drywall projects as well as some commercial projects.  However, the secrecy of the discussions between Steier and Locke regarding CWI's formation creates a genuine issue of fact as to whether Steier knew that CWI and SDC would be competitors.   Accordingly, summary judgment is inappropriate as to SDC's claim against Steier for aiding and abetting a breach of fiduciary duty.

## III. Tortious Interference with Actual and Prospective Contracts

SDC claims that Locke, Steier, and CWI interfered with an existing contract to perform drywall services and interfered with its prospective contracts.  Kentucky recognizes the torts of interference with contract and interference with prospective contractual relations.  *See Nat'l Collegiate Athletic Ass'n v. Hornung*, 754 S.W.2d 855, 857 (Ky. 1988) ("several... Kentucky decisions recognize that contractual relations or prospective contractual relations are protected from improper interference").  SDC has provided evidence that the defendants interfered with SDC's existing contract with Marksbury  Cornett

---

[2]Steier also argues that Locke had no fiduciary duty to SDC and that if Locke had such a duty, it was not breached.  The court addressed these arguments above in connection with the discussion of SDC's breach of fiduciary duty claim.

Engineering Corporation by convincing Marksbury to reissue a job to CWI that it had previously issued to SDC.  SDC also provided evidence that Locke submitted higher bids to potential clients on behalf of SDC while submitting lower bids to the same clients on behalf of CWI, thereby interfering with SDC's prospective contracts.

"Interference cases in Kentucky 'have turned almost entirely upon the defendant's motive or purpose, and the means by which he has sought to accomplish it,' which are factors that courts analyze to determine whether the defendant's conduct was 'intentional and improper.'"  *Excel Energy, Inc. v. Cannelton Sales Co.*, 246 Fed.Appx. 953, 967 (6th Cir. 2007) (quoting *Hornung*, 754 S.W.2d at 859). In *Steelvest,* the Kentucky Supreme Court stated that:

> Under Kentucky law, tort liability exists for the interference with a known contractual relationship, if the interference is malicious or without justification, or is accomplished by some unlawful means such as fraud, deceit, or coercion. We would presume to place the breach of fiduciary relationship on an equal par with fraud and deceit. Accordingly, we determine, as a matter of law, that a breach of a fiduciary duty is equivalent to fraud.

807 S.W.2d at 487.  Because an issue of fact exists as to whether Locke breached his fiduciary duty and whether Steier aided and abetted a breach of fiduciary duty, an issue of fact also exists as to whether their, and CWI's, interference with SDC's actual and prospective contracts was accomplished by fraud. *See ATC Distrib.*, 402 F.3d at 717 (finding that "[i]n light of *Steelvest*, the district court's holding that any interference with business relations committed by Hester did not rise to the level of an intentional tort cannot be reconciled with the district court's refusal to find for summary judgment purposes that Hester did not breach a fiduciary duty to ATC.  Insofar as there remains a material issue of fact about Hester's breach of duty, there must also exist a material question of fact as to whether any inference with ATC's contracts ascribed to Hester was intentional).  Accordingly, summary judgment is inappropriate as to SDC's claims for interference with actual and prospective contracts.

A separate order will be entered this date in accordance with this opinion.